UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DESMOND ROUSE,<br><br>          Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent. | Case: 4:06-cv-04008-LLP<br><br><br>**Brief in Opposition to<br>Petitioner's Motion for New Trial** |

Respondent, United States of America, by and through its counsel of record United States Attorney Ronald A. Parsons, Jr., and Assistant United States Attorney Delia M. Druley, respectfully submit this Brief in Opposition to Petitioner's Motion for a New Trial.

## INTRODUCTION

The government respectfully requests that this Court deny Rouse's Rule 60(b)(6) motion. Rouse's motion is in actuality a successive motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, which requires authorization from the Eighth Circuit Court of Appeals. The Eighth Circuit denied Rouse that authorization, depriving this Court of any jurisdiction over Rouse's claims.

Even if Rouse's Rule 60(b) motion were not a successive petition, he cannot demonstrate the "extraordinary circumstances" required for relief from Judgment under Rule 60(b)(6). The "new" expert evidence Rouse seeks to

present is not timely presented.  This Court found the victims' recantations, which are central to Rouse's claims, not to be credible after a four-day evidentiary hearing.  Similarly, this Court determined the testimony of Rouse's witness was not credible evidence of racial bias by the jury, especially because she was not a member of the jury.  Nor can Rouse make the extraordinary showing required to assert a gateway actual innocence claim.  For these reasons, Rouse's motion for relief from judgment pursuant to Rule 60(b)(6) should be denied.

## FACTUAL BACKGROUND

Following a three-week jury trial in 1994, Petitioner Desmond Rouse, Jesse Rouse, Garfield Feather, and Russell Hubbeling were convicted of numerous counts of sexual abuse against their five nieces, who ranged in ages from 20 months old to seven years old. *United States v. Rouse*, 111 F.3d 561, 565 (8th Cir. 1997).  A fifth defendant, Duane Michael Rouse, was acquitted of all charges against him. *Id.* at 565. All five defendants are Native American men. *Id.*

The victims are granddaughters of Rosemary Rouse. *Id.* During the summer and fall of 1993, the defendants lived at Rosemary's home on the Yankton Sioux Reservation. *Id.* After five-year-old Rosemary Rouse[1] was removed from her home due to neglect and malnutrition, she disclosed sexual abuse to her foster mother. *Id.* Rosemary also disclosed acts of sexual abuse

---

[1] The victims are now adults who have submitted signed affidavits to this Court, choosing to be identified by their full names.  Thus, to eliminate confusion, the government will refer to them accordingly rather than its usual practice of referring to child victims by their initials.

against her and the other children to her counselor, who then reported the sexual abuse to the Department of Social Services. *Id.* Thirteen children were then removed from the Rouse home. *Id.*

Four days later, the children were examined by pediatrician Richard Kaplan. *Id.* During their examinations, Jessica Rouse, Lucritia Rouse, and Thrista Rouse all indicated that their uncles had hurt them in their private parts. *Id.* FBI Special Agent William Van Roe and BIA Criminal Investigator Daniel Hudspeth then interviewed Jessica Rouse, Thrista Rouse, Rosemary Rouse, and Lucritia Rouse, who all again reported sexual abuse by their uncles. *Id.* Dr. Robert Ferrell subsequently conducted a colposcopic examination of the five victims and observed findings that he believed were consistent with sexual abuse. *Id.* In the present motion, Rouse now takes issue with the findings reported by Dr. Kaplan and Dr. Ferrell.

After the trial, Verna Boyd (then Severson) contacted the Clerk of Court, alleging juror misconduct and racial bias on the part of her coworker, Pat Pickard. *See* CR. Docket 323-1 Order Denying Motions for New Trial at 1.[2] The Court notified counsel for the defendants and held four separate hearings on the alleged juror misconduct. *Id.* at 2. Boyd testified to her belief that Juror Pickard was prejudiced against Native Americans and enumerated several instances of racially discriminatory conduct that Pickard had either said herself or that Pickard told her had occurred during her jury service. *Id.* at pp. 2-3.

---

[2] The docket in the original criminal case, 4:94-cr-40015-LLP (D.S.D.), will be cited as "CR." followed by the applicable docket number.

3

Pickard testified as well. *Id.* at pp. 4-5. She said that she was not racially prejudiced, and she denied many of the specific statements that Boyd alleged were made. *Id.* The Court also heard testimony from the jury foreperson, the alternate juror, and multiple coworkers of Pickard. *Id.* at pp. 6-14. The Court also noted that during voir dire, one of the defense attorneys asked the prospective jurors if any of them were of Native American descent and two jurors raised their hands. *Id.* at p. 10. One of those two ultimately served on the jury. *Id.* The Court concluded that Pickard was a more credible witness, and it denied defendant's motion for a new trial on the ground that Pickard failed to disclose any racial prejudice during voir dire. *Id.* at 15.

On direct appeal, two judges of the Eighth Circuit initially reversed the defendant's convictions, holding this Court erred in rejecting expert testimony that the children's testimony regarding sexual abuse had been coerced by the adults in the case. *See United States v. Rouse*, 100 F.3d 560 (8th Cir. 1996). That opinion was vacated upon grant of a petition for rehearing by the same panel. The panel affirmed the exclusion of the proposed expert testimony as harmless error, and it affirmed this Court's denial of the motion for a new trial based upon Boyd's testimony. *See United States v. Rouse,* 111 F.3d 561 (8th Cir. 1997).

In 1999, the defendants filed a second motion for a new trial based upon the recantations of the victims. This Court held a four-day evidentiary hearing on the alleged recantations in 2001. *United States v. Rouse*, 329 F. Supp.2d 1077 (2004). Following the four -day evidentiary hearing, the Court concluded

4

that the victims' recantations were not credible.  *Id.*  The Eighth Circuit affirmed that finding.  *United States v. Rouse*, 410 F.3d 1005 (8th Cir. 2005).

In his first pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, Desmond Rouse alleged that he was innocent and that the "children were held prisoner for six months," but did not identify the constitutional grounds for his motion.  *See* 4:06-cv-4008-LLP, Docket 1.  That motion was denied as untimely.  *Id.* at Docket 8, Memorandum Opinion and Order. The Eighth Circuit Court of Appeals affirmed that finding.  *Rouse v. United States*, NO. 14-2169 (8th Cir. 2014).

### STANDARD OF REVIEW

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party from a final judgment, order, or proceeding for various reasons, such as mistake, newly discovered evidence, or fraud.  Rule 60 also includes a catchall provision, which allows the court to relieve a party for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).  In order for a court to grant a Rule 60(b)(6) motion, the movant must show "extraordinary circumstances" to justify relief and "[s]uch circumstances will rarely occur in the habeas context." *Buck v. Davis*, 137 S. Ct. 759, 772 (2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)). "Relief is available under Rule 60(b)(6) only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress." *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir.2005).

<u>**ARGUMENT**</u>

I.   **Because the present motion asserts claims, it should be considered a successive motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255**.

The Eighth Circuit has directed district courts to evaluate whether a purported Rule 60(b) motion is in fact a second or successive habeas petition before addressing it under Rule 60(b).  *Boyd v. United States,* 304 F.3d 813, 814 (8th Cir. 2002). It is well established that inmates cannot circumvent the authorization requirement of 28 U.S.C. § 2244(b)(3) for filing a successive § 2255 action by invoking some other procedure.  *See United States v. Patton*, 309 F. 3d 1093 (8th Cir. 2002) (per curiam) (collecting cases).  A motion pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure can be a "second or successive petition" requiring the authorization of the Eighth Circuit Court of Appeals if it contains a claim. *Ward v. Norris,* 577 F.3d 925, 933 (8th Cir. 2009).  "For the purpose of determining whether the motion is a habeas corpus application, claim is defined as 'an asserted federal basis for relief from a state court's judgment of conviction' or as an attack on the 'federal court's previous resolution of the claim on the merits.'" *Davis v. Kelley*, 855 F.3d 833, 835 (8th Cir. 2017) (quoting *Gonzales v. Crosby*, 545 U.S. 524, 530, 532 (2005)). Conversely,

> No claim is presented if the motion attacks some defect in the integrity of the federal habeas proceedings.  Likewise, a motion does not attack a federal court's determination on the merits if it merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute of limitations bar.

*Ward,* 577 F.3d at 933 (internal quotes omitted).

6

Here, Rouse is raising new substantive arguments in support of his motion for a new trial.  Thus, his Rule 60(b) motion attacks the court's resolution of his previous § 2255 motion on the merits, not based on "some defect in the integrity of the federal habeas proceedings." *Gonzalez,* 545 U.S. at 532.   Rouse does not make any argument that this Court's conclusion that his initial habeas petition was untimely was in error.  *See Ward*, 577 F.3d at 933.  Rather, Rouse advances new grounds for relief, asserting that "new" forensic evidence, the alleged recantation of the victims, and the Supreme Court's decision in *Peña-Rodriguez v. Colorado,* 580 U.S. ___, 137 S. Ct. 855 (2017) require a new trial.   Thus, Rouse's Rule 60(b)(6) motion should be treated as a successive § 2255 motion, which requires permission from the Eighth Circuit Court of Appeals pursuant to 28 U.S.C. § 2255(h).  *See Rhines v. Young*, NO. 5:00-CV-0520-KES, 2018 WL 2390130 at *8 (D.S.D. May 25, 2018) (holding that Rule 60(b) motion based on *Peña-Rodriguez* was a successive habeas petition because he was asserting a claim of error in his conviction); *United States v. Fay*, No CR. 81-30007-RAL, 2013 WL 3480897 at * (D.S.D. July 10, 2013) (holding that because "all of the claims set forth in [petitioner's] Rule 60(b) motion challenge the merits of his conviction," petitioner's Rule 60(b) motion was a successive habeas and should be dismissed). The government, accordingly, requests that this Court deny Rouse's Rule 60(b)(6) motion.

## II. The Eighth Circuit Court of Appeals denied Rouse leave to file a successive § 2255 petition based on grounds identical those asserted here.

Rouse filed a Motion for Authorization to File a Successive Motion to Vacate, Set Aside, or Correct Sentence based on the same grounds he advances here. The Eighth Circuit denied that motion on June 4, 2018. *See* Civ. 18-1478, June 4, 2018 Order Denying Authorization for Leave to File Successive Habeas. The formal mandate issued that same day. Thus, Rouse is not entitled to pursue a successive motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. "If the district court determines the Rule 60(b) motion is actually a second or successive habeas petition, the district court should dismiss it for failure to obtain authorization from the Court of Appeals or, in its discretion, may transfer the purported Rule 60(b) motion to the Court of Appeals." *Boyd*, 304 F.3d at 814. *See also Burton v.* Stewart, 549 U.S. 147, 152 (2007) (reasoning that because petitioner filed a successive petition without appellate authorization, "the [d]istrict [c]ourt never had jurisdiction to consider it in the first place"). Because this motion has already been denied, the United States requests that the Court dismiss Rouse's Rule 60(b) motion, rather than transferring it to the Eighth Circuit Court of Appeals. Thus, this Court need not analyze the merits of the claims advanced in Rouse's Rule 60(b)(6) motion.

## III. The "new" forensic evidence Rouse seeks to present is not timely presented under Rule 60(c)(1).

Rule 60(b)(6) "permits reopening when the movant shows 'any  . . . reason justifying relief from the operation of the judgment' *other than the more specific*

8

circumstances set out in Rules 60(b)(1)-(5)." *Gonzalez,* 545 U.S. at 528-29 (emphasis supplied). Such a motion must be made within a "reasonable time." Fed. R. Civ. P. 60(c)(1). Because the "new evidence," Rouse seeks to present was available far in advance of the present motion, it is not made within a reasonable time.

Rouse's experts criticized the sexual abuse exams conducted by Dr. Ferrell and Dr. Kaplan in this case because neither provided photographic documentation. *See* Appendix G, Affidavit of Dr. Janice Ophoven. The absence of photographic documentation is not new evidence. The absence of photographs is a fact known since the exams were conducted and certainly since the trial of these defendants over twenty years ago. It cannot be construed to satisfy the requirement of Rule 60(c)(1) that a motion for relief from judgment based on "any other reason that justifies relief" be made within a reasonable time.[3]

To the extent that Rouse bases his petition on the expert testimony of Dr. Joyce Adams and Diana Faugno, a sexual assault nurse examiner, their petition is also untimely. Both Dr. Adams and Faugno openly admit that they provided

---

[3] If Rouse sought to present this evidence in a successive § 2255 motion, the use of this evidence would be barred by 28 U.S.C. § 2255(f)(4)'s requirement that successive petitions based on "newly discovered" evidence be filed within one year of the discovery of the evidence. None of the expert testimony presented here is timely presented under § 2255(f)(4). Thus, this motion like many motions under Rule 60(b)(6), is an attempt to avoid this time limitation. *See* Wright & Miller, § 2864 Other Reasons Justifying Relief, 11 Fed. Prac. & Proc. Civ. § 2864 (3d ed.) ("For the most part, cases brought under clause (6) are attempts to avoid either the one-year limit in other clauses of Rule 60(b) or time restrictions for other types of post-trial review imposed in other rules.").

their expert opinions to "a supporter of the defendants in this case" in 2015, three years before the filing of the instant motion and three years before Rouse's filing of a motion for leave to file a successive petition. *See* Appendix H, Affidavit of Joyce Adams at ¶ 12; Appendix L, Affidavit of Diana Faugno at ¶ 4. Adams' earlier affidavit is dated August 8, 2014. *See* Appendix H, Affidavit of Dr. Joyce Adams and attachments at pp. 66-67. The substance of Dr. Adams' 2018 Affidavit is identical to her 2014 Affidavit. *Compare* pp. 40-42 *with* pp. 67-68 of Appendix H.

Dr. Adams' opinions have been available to Rouse since at least August 8, 2014, almost four years before the filing of the instant motion. Likewise, Faugno provided a previous affidavit on February 17, 2015. Appendix L, Faugno Aff. at ¶ 4. Her 2018 affidavit merely adds two publications regarding medical findings in child sexual abuse cases. *Id.* at ¶ 7. Otherwise, the substance of Faugno's opinion has not changed and has been available to Rouse since at least February 17, 2015. Thus, to the extent that Rouse bases his motion on Dr. Adams and Faugno's expert testimony, it is not presented within a reasonable time, as required by Rule 60(c)(1).

Dr. Janice Ophoven's expert opinion is in some respects more detailed than the opinion provided by Dr. Adams in 2014, but her substantive findings and criticism of the examining physicians' findings do not differ in any significant respect. Consequently, her 2018 opinion also cannot be considered "new evidence." Reaching the opposite conclusion would permit petitioners like Rouse to circumvent the statute of limitations applicable to habeas petitions by

10

repeatedly engaging additional expert witnesses to expand upon earlier findings and presenting those arguments in Rule 60(b)(6) motions, rather than in habeas petitions as intended by Congress when it enacted the Anti-Terrorism and Effective Death Penalty Act (AEDPA).   Such a result would frustrate both Congressional intent and the "law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Finally, Rouse's argument that flawed medical testimony deprived him of due process at their trial is plagued by a fundamental problem: it presupposes that the testimony was required for conviction.   It is well established that sexual abuse convictions do not require medical testimony or physical evidence. *See United States v. Wright*, 119 F.3d 630, 634 (8th Cir. 1997) (holding that a four-year old's testimony was sufficient to support a conviction for sexual abuse, despite the absence of any physical evidence of abuse); *see also United States v. Gabe*, 237 F.3d 954, 961 (8th Cir. 2001)   ("[A] victim's testimony alone is sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt."); *United States v. Kirkie*, 261 F.3d 761, 768 (8th Cir. 2001) ("To the extent that Kirkie also challenges the sufficiency of the evidence based on the contention that there was no physical evidence of abuse, we also find no error in denying his motion for an acquittal").   The testimony of the victims, which was corroborated by testimony from their foster mother, statements they made to the examining physicians, and to the investigating officer, would have been sufficient to support their convictions.   Thus, Rouse was not denied the basic fairness guaranteed to him by the Due Process Clause of Fifth Amendment.

11

**IV.    This Court, in a well-reasoned and carefully considered opinion, has already concluded that the victims' alleged recantations are not credible**.

Rouse also argues that the alleged recantations of the victims warrant granting his motion for a new trial. Nothing in the recantations presented by Rouse today changes the well-reasoned credibility findings of this Court as affirmed by the Eighth Circuit Court of Appeals. Consequently, Rouse's reliance on those recantations today is unpersuasive.

The circumstances of the recantations themselves undermined their credibility. This Court noted that "[t]he children did not recant until they were sent home and were being cared for by mothers and a grandmother who did not believe that the abuse had occurred and who made it known to the children that they missed their sons and brothers." *United States v. Rouse*, 329 F. Supp. 2d 1077, 1088 (D.S.D. 2004).

Moreover, the recantations were inconsistent with statements that the children had made after trial. After the trial, but before they returned home, the children continued to describe acts of sexual abuse during therapy. *Id.* at 1088. Once they returned home, the children quit supportive therapy and several of them quit school, further isolating them from anyone other than their family members. *Id.* On one occasion, one of the children approached her school counselor and told her she was afraid for Christmas because her uncles were coming home, he had touched her private parts, and she was afraid he would be coming home and be mad at her for telling. *Id.* at 1081.

12

This Court also found that the interviews conducted by defendants' expert Dr. Underwager did not make the recantations appear credible. *Id.* at 1089. Indeed, the videotaped interviews with Dr. Underwager revealed that one of the children refused to recant her testimony during the interview and stated that her uncle did do things to her that were not right. *Id.*

To accept the recantations presented in Rouse's motion, this Court would have to accept that both the prosecution and the FBI instructed the children to lie at trial, promised them various things in exchange for those lies, and that the prosecution subsequently presented perjured testimony during the 2001 evidentiary hearing. This Court has already rejected Rouse's arguments that the children were told to lie, after hearing testimony from the prosecution, the investigating case agency, the children's guardian ad litem, the probation officer who prepared the presentence reports, and others. After reviewing this testimony, this Court specifically found that "there is no credible evidence that the prosecutor was aware, prior to the trial of this case, that any of the children ever denied that the abuse occurred." *Id.* at 1087.

The Eighth Circuit affirmed those findings. *See also United States v. Rouse*, 410 F.3d 1005 (8th Cir. 2005) (affirming denial of motion for new trial). The Eighth Circuit reasoned that: "By the time of the evidentiary hearing, the children had been living with their mothers for at least two years, within walking distance of their grandmother's home. These women never believed the children's accusations, and testified on the defendants' behalf at trial. The children knew their grandmother and mothers missed the defendants." *Id.* Rouse presents

nothing today that requires this Court to revisit and upend those previous rulings, reached through careful, thorough review.  Thus, Rouse has not made the required showing of "exceptional circumstances" to merit relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure.

## V.  Rouse's criticism of forensic interview techniques for children is not new and was not presented to this Court within a reasonable time.

During the trial, defendants presented evidence regarding the ways that children's allegations of physical or sexual abuse could be tainted by adult questioning practices that "suggest false answers or even implant false memories." *See United States v. Rouse*, 111 F.3d 561, 570-71 (8th Cir. 1997) (initial direct appeal).  Rouse and the other defendants also presented evidence critiquing the method utilized to interview the children during their 2004 motion for a new trial, which was predicated on the alleged recantations of the children. *See, e.g., United States v. Rouse,* 329 F. Supp. 2d 1077 (D.S.D. 2004). Thus, Rouse has continually raised these criticisms at trial and throughout the twenty years that have elapsed between his convictions and the present.  To the extent Rouse bases his motion on the specific expert opinions now being presented to this Court, the evidence is neither new nor timely submitted to this Court.

What constitutes a reasonable time within which a Rule 60(b)(6) motion must be filed depends upon the facts and circumstances of the particular case. *Middleton v. McDonald*, 388 F.3d 614, 617 (8th Cir. 2004).  Here, Dr. Kamala London's opinion was developed as early as July 10, 2015.  *See* Appendix I, Affidavit of Dr. Kamala London at ¶ 3 ("On July 10, 2015, I provided a report

14

regarding this case to a supporter of the defendants in this case.").  Thus, even if she was offering "new evidence," it is not presented to this Court within a reasonable time, as required by Fed. R. Civ. P. 60(c)(1).  Moreover, even if it were timely, the presentation of additional evidence to bolster claims that Rouse made at trial and in his repeated post-conviction motions cannot qualify as the extraordinary circumstances required to justify relief under Rule 60(b)(6).

Although Dr. Hollinda Wakefield's Affidavit is dated in 2018, the majority of the research she relies upon significantly predates her Affidavit.  *See* Appendix J, Affidavit of Dr. Hollinda Wakefield.  Dr. Wakefield cites 67 different scholarly articles in her expert opinion, spanning from 1994-2016.  *Id.*  Of those 67 articles, 16 were published during the 1990s, beginning in 1994, the year of the trial in this matter.  *Id.*  An additional 37 articles cited were published between 2000-2010, eight years before the filing of this motion.  *Id.* The remaining 14 articles cited were published after 2010.  *Id.*  Thus, the overwhelming majority of the scholarly works Dr. Wakefield relied upon in formulating her opinion were available a full ten years before the filing of this motion.   Consequently, even accounting for Rouse's pro se status, this "new evidence" is not presented within a reasonable time.

Rouse also presents an Affidavit from Dr. Maggie Bruck (Appendix K), who testified in 2004 at the evidentiary hearing on the motion for a new trial predicated upon the children's alleged recantations.  *See United States v. Rouse*, 329 F. Supp. 2d 1077, 1080 (D.S.D. 2004). This Court noted that Dr. Bruck "did not interview the child witnesses and her testimony was not specific to the facts

15

of this case." *Id.* Once again, the information Dr. Bruck seeks to provide is a review of the scholarly literature related to interviews of child victims. Although Dr. Bruck has updated her testimony with additional publications, it is not new evidence. The crux of her testimony, which again, is not predicated upon interviews with the child witnesses or the specific facts of this case, has not changed. Consequently, it does not qualify as an "extraordinary circumstance" justifying relief under Rule 60(b)(6).

**VI.** ***Peña-Rodriguez* is not retroactive.**

Rouse argues that his motion for a new trial should be granted based upon the holding in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017). In that case, the Supreme Court held that when a juror makes a clear statement that she relied upon racial animus to convict, the Sixth Amendment requires that the no-impeachment rule give way to permit the trial court to consider the evidence of the juror's statement. *Id.* Specifically, Rouse argues that the change in the law effected by *Peña-Rodriguez* qualifies as an "extraordinary circumstance" justifying relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure. A change in decisional law is usually not, by itself, an "extraordinary circumstance" warranting Rule 60(b)(6) relief. *Gonzalez*, 545 U.S. at 536–37.

Rouse has identified no precedent holding that *Pena-Rodriguez* qualifies to grant retroactive collateral review. At least three justices of the Supreme Court have stated unequivocally that it does not. In a dissent joined by Justices Alito and Gorsuch, Justice Thomas recently noted that "no reasonable jurist could argue that *Peña-Rodriguez* applies retroactively on collateral review." *Tharpe v.*

*Sellers*, 138 S. Ct. 545, 551 (2018).   Although Tharpe did not attempt to argue that *Peña-Rodriguez* qualifies as a watershed rule of criminal procedure, Justice Thomas noted that was because he could not.  *Id.*  The watershed rule of criminal procedure category is so narrow that "[n]ot even the right to have a jury decide a defendant's eligibility for death counts as a watershed rule of criminal procedure." *Id.* (citing *Schriro*, 542 U.S. at 355-58).  Thus, Justice Thomas concluded that there is no possibility that the rule announced in *Peña-Rodriguez* is a watershed rule of criminal procedure, applicable retroactively.[4]  Similarly, Rouse cannot make the showing required to establish that *Peña-Rodriguez* is the first watershed rule of criminal procedure created by the Supreme Court of the United States.

In *Teague v. Lane*, 289 U.S. 288, 300 (1989), the Supreme Court adopted a rule to "clarify how the question of retroactivity should be resolved for cases on collateral review."  The Court held that "new rules" of criminal procedure "should not be applied retroactively to criminal cases on collateral review." *Id.* at 303-04. In other words, "a new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001). There are two exceptions to this general bar.  "A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the

---

[4] On remand, the Eleventh Circuit rejected Tharpe's argument that *Peña-Rodriguez* was retroactive because it created a new substantive rule.  *Tharpe v. Warden,* ___ F.3d ___, 2018 WL 3816839 at *2-3 (11th Cir. Aug. 10, 2018). Tharpe did not even attempt to argue that *Peña-Rodriguez* created a watershed rule of criminal procedure. *Id.* at *3.  *See also McKnight v. Bobby,* No. 2:09-cv-059, 2018 WL 2327668 at (S.D. Ohio May 22, 2018) (rejecting arguments that *Peña-Rodriguez* is retroactive).

rule is a watershed rule of criminal procedure implicating the fundamental fairness of the criminal proceeding." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007). Rouse does not argue that *Peña-Rodriguez* is substantive. Thus, the question is whether Rouse can make the substantial showing that *Peña-Rodriguez* is a watershed rule of criminal procedure that implicates fundamental fairness. This is an "extremely narrow" exception. *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004).

The exception is so rare that the Supreme Court has not yet found that it has created a "watershed rule of criminal procedure" with one of its rulings. *See Whorton*, 549 U.S. at 418. It has rejected every claim that a new rule satisfied the requirements for watershed status. *Id.* In *Schriro*, the Court rejected the argument that the holding in *Ring v. Arizona*, 536 U.S. 584 (2002), that an aggravating factor making a criminal defendant eligible for the death penalty must be proved to a jury, not a judge, was a watershed rule of criminal procedure. 542 U.S. at 358. In *Beard v. Banks*, 542 U.S. 406 (2004), another death penalty case, the Court rejected arguments that *Mills v. Maryland,* 486 U.S. 367 (1988), which invalidated capital sentencing schemes regarding juries to disregard the presence of mitigating factors not found unanimously, was such a rule. *See also O'Dell v. Netherland,* 521 U.S. 151 (1997) (holding *Simmons v. South Carolina*, 512 U.S. 154 (1994), that a capital defendant must be allowed to inform the sentencing jury that he would be ineligible for parole if the prosecution argued future dangerousness, was not a watershed rule); *Sawyer v. Smith*, 497 U.S. 227 (1990) (*Caldwell v. Mississippi*, 472 U.S. 320 (1985) holding

18

the Eighth Amendment bars imposition of the death penalty if the jury has been led to believe that the responsibility for that ultimate decision lies elsewhere, did not fall within the second Teague exception).  If decisions implicating the right to have a jury decide elements of the death penalty are not watershed rules of criminal procedure, it would require this Court to venture out on a limb to hold that the limited racial discrimination exception to the no impeachment rule announced in *Peña-Rodriguez* qualifies as one.

**VII.   Even if *Peña-Rodriguez* were retroactive, the evidence Rouse seeks to present is not sufficiently reliable to justify disturbing the jury's verdict**.

The evidence Rouse seeks to present is insufficient to justify the application of *Peña-Rodriguez's* exception to the no impeachment rule. In *Peña-Rodriguez*, the Court framed the issue as "whether there is an exception to the no-impeachment rule when, after the jury is discharged, a juror comes forward with compelling evidence that another juror made clear and explicit statements indicating that racial animus was a significant motivating factor in his or her vote to convict." 137 S. Ct. at 861.

In *Peña-Rodriguez*, two jurors came forward after the verdict was announced and stated that during deliberations another juror had expressed anti-Hispanic bias toward Peña-Rodriguez and his alibi witness, who was also Hispanic.  *Id.*  The *Peña-Rodriguez* court cautioned that "[n]ot every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry." *Id.* at 869.  Rather,

19

> [T]here must be a showing that one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations and resulting verdict.  To qualify, the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict.  Whether that threshold showing has been satisfied is a matter committed to the substantial discretion of the trial court in light of all the circumstances, including the content and timing of the alleged statements and the reliability of the proffered evidence.

*Id.* (emphasis supplied).  Rouse cannot make the required showing.

Because the *Peña-Rodriguez* decision is so recent, few courts have applied its reasoning.  Those that have, however, have declined to determine whether it is retroactive and have failed to extend the racial discrimination exception to the no impeachment rule even where the evidence in question came directly from a member or members of the jury. Rouse's supposed evidence that the jury allegedly relied upon racial animus to convict them does not even come from a member of the jury.

In *Williams v. Price*, 2:98cv1320, 2017 WL 6729978 (W.D. Penn. Dec. 29, 2017), the district court for the Western District of Pennsylvania confronted the issue after Williams sought to present an affidavit from a deceased juror and testimony of one of the trial jurors to establish that jurors lied when asked about racial bias.  Specifically, the affidavit from a deceased juror stated that she had been called a "n***** lover" and other derogatory remarks during deliberations and being told that "I hope your daughter marries one of them." *Id.* at n.6. Williams also sought to present an affidavit from a witness who had testified at trial, stating that after the proceedings in the case, she ran into a juror who stated "All n****** do is cause trouble" and told her to "go back where she came

from." *Id.* at n.6.  The court, assuming without deciding that *Peña-Rodriguez* was retroactive, found that these comments were not sufficient to invoke the racial discrimination exception to the no impeachment rule articulated in *Peña-Rodriguez. Id.* at *9.  Specifically, it reasoned that the comments were not specifically directed to the defendant and that they failed to show that racial animus was a significant motivating factor in the juror's vote to convict. *Id.*

In *United States v. Robinson*, 872 F.3d 760 (6th Cir. 2017),[5] the Sixth Circuit similarly declined to extend *Peña-Rodriguez* to invalidate a jury's verdict. After being contacted by the defense's private investigators, two African American members of the jury indicated that they were initially unconvinced by the evidence of the defendants' guilt.  *Id.* at 767.  The jury foreperson, a white woman, reportedly told them that she believed they were reluctant to convict because they felt they "owed something" to their "black brothers." *Id.*  The court found that these remarks were not sufficient to invoke Pena-Rodriguez's exception to the no impeachment rule.  *Id.* at 770.  The Court reasoned that "*Peña-Rodriguez* makes clear that it does not apply to a merely 'offhand comment indicating racial bias or hostility,' but only to a 'clear statement' that 'tends to show that racial animus was a significant motivating figure in the juror's vote to convict.'" *Id.* (quoting *Peña-Rodriguez*, 127 S. Ct. at 869).  The juror's comments did not show that animus was a significant motivating factor in her vote to convict.  *Id.*  Thus, they were insufficient to invoke *Peña-Rodriguez.*

---

[5] A petition for certiorari is pending.

Here, one of the comments Boyd now alleges was made during deliberations, that all Native American men hurt little girls, is admittedly similar in some ways to the comment made by the juror in *Peña-Rodriguez*. But here, the report is not from someone who was inside the jury room. Rather, it comes from a former coworker of one juror, Pat Pickard. *See* Appendix M, Affidavit of Verna Boyd. And that witness has already been determined to be less credible than the juror she maligns. In her affidavit, Ms. Boyd alleges that Juror Pickard told her of several instances of jokes regarding Native Americans and a comment that Native Americans abuse little girls that were made during the jury's deliberations. *Id.*[6] Ms. Boyd was not permitted to testify to those matters before the district court shortly after the trial in 1994 because of the no-impeachment rule. She did, however, give other testimony regarding her impressions of Juror Pickard's alleged prejudice towards Native Americans.

Following the trial, Boyd (who then went by Severson) contacted the Court with her concerns about Juror Pickard and potential juror misconduct. The defendants moved for a new trial on the basis of juror misconduct, based upon Ms. Boyd's testimony. This court thoroughly analyzed the claims. It held four

---

[6]Boyd's sworn testimony from one of the evidentiary hearings contradicts her affidavit. During her testimony, she stated that Juror Pickard "never clarified when the derogatory statements and jokes were being made. All I know is they were made, but I don't know if it was outside of the jury-room or in the jury-room. I know of *one* derogatory thing in the jury-room, but I can't talk about that." CR. Docket 278-1, Transcript of October 26, 1994 Hearing at p. 53 (emphasis supplied). Boyd's testimony has evolved and she now claims that she knows of at least three instances of racial prejudice that allegedly occurred during deliberations.

separate evidentiary hearings on October 26, 1994, November 3, 1994, December 6, 1994, and January 4, 1995. *See* CR. Docket 323-1, Order Denying Motions for New Trial; CR. Docket 278-1, Transcript of October 26, 1994 Hearing; CR. Docket 290-1, Transcript of November 3, 1994 Hearing; CR. Docket 330-1, Transcript of December 5, 1994 Hearing. This Court heard testimony from Boyd, Pickard, the jury foreperson, the alternative juror, and multiple coworkers of both Boyd and Pickard. After reviewing all of the testimony, and placing substantial reliance upon the testimony of the mutual coworkers of the two, the court concluded that Juror Pickard was a more credible witness than Boyd. *See* CR. Docket 323-1 at 11-14. This Court also noted that both the jury foreperson and the alternate juror "testified credibly that they did not hear juror P.P. make racially disparaging remarks about the defendants or about Native American people during the trial." *Id.* at 6, *see also id.* at 14. "Further, both testified that during trial they did not hear any juror tell ethnic jokes or engage in other conduct suggesting racial prejudice toward the defendants or Native Americans." *Id.* at 6. Nothing in Rouse's current filing suggests that this credibility determination would change.

Moreover, Boyd was permitted to testify about a comment  regarding all Native American men's alleged propensity to sexually abuse young girls that is strikingly similar to the comment she now alleges she was told was made during the jury's deliberations. Specifically, Boyd testified that:

> She said that she talked to a social worker that is either --- and this is the part I can't remember; it's either a friend or a relative, but she talked to a social worker who told juror P.P. that *it's a sad thing to be born an Indian girl*

23

> *because Indian girls are used for sexual purposes.* Then I came back with, "Oh, Juror P.P. I know too many families who would never harm their daughters in that way, and secondly, there are White people in society that harm children too." And she said, back to me she said, *"No. The social worker says it's in their culture. They all do it."* That's when I got up and walked out.

CR. Docket 278-1, Transcript of October 26, 1994 Hearing at p. 21 (emphasis supplied). Boyd later admitted that she did not know whether Juror Pickard had communicated that sentiment to the other jurors. *Id.* at p. 56 ("Q: Ma'am, just answer this one 'Yes' or 'No.' Do you know one way or another whether Juror P.P. ever commented in the presence of other jurors anything to the effect that 'Indian people do it' whether 'they all do it,' referring to sexual abuse of children within their families? A: No."). After reviewing all of the evidence presented, including this comment, the Court found that Juror Pickard was a more credible witness and denied defendants' motion for a new trial.

Even if *Peña-Rodriguez* allowed for retroactive collateral review, the evidence of alleged racial discrimination Rouse seeks to present is not sufficiently reliable to justify departing from the no impeachment rule under *Peña-Rodriguez.* In the intervening twenty years, no members of the jury have come forward to say that their deliberations were infected by racial animus. The only such evidence comes from a witness that this Court has already determined was less credible than the juror alleged to be racially biased. The jury foreperson and the alternate juror credibly testified that Juror Pickard did not make racially disparaging remarks about the defendants or Native American people during the trial. Moreover, if the jury's deliberations were tainted by pervasive racial animus, there is no explanation for the acquittal of the fifth defendant, who was

also a Native American man.    The stability and finality of the jury's verdict in this case should not be disturbed on such shaky evidence.

## VIII.  Rouse cannot meet the exacting standard required to establish a gateway actual innocence claim.

Rouse also asserts that under *Schlup v. Delo*, 513 U.S. 298 (1995) and *McQuiggen v. Perkin*s, 569 U.S. 383, 386 (2013), he has stablished a gateway claim of actual innocence sufficient to permit them to file a successive habeas petition. *Schlup* provides that a habeas petitioner may obtain review of otherwise barred claims if he produces reliable new evidence not available at trial establishing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Amrine v. Bowersox*, 238 F.3d 1023, 1028 (8th Cir.2001) (*Amrine II*).  In other words, Rouse must demonstrate "that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).  This standard is demanding and permits review only in the extraordinary case.    *Id.*

As a threshold matter, gateway claims made under *Schlup* and *McQuiggen* permit a habeas petitioner to present procedurally defaulted constitutional claims.  *See McQuiggen*, 569 U.S. at 401 (stating that the gateway opens "when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is satisfied that the *trial was free of nonharmless constitutional error*) (emphasis supplied).  Rouse does not identify the procedurally defaulted constitutional claim that they wish to pursue.  To the extent he seeks to pursue a Fifth Amendment due process claim

based upon the allegedly faulty medical testimony used to convict them that claim fails because physical evidence and medical testimony are not required to sustain a sexual abuse conviction.   *See supra at* p. 11.   The United States Supreme Court has not recognized a freestanding actual innocence claim.   *See Herrera v. Collins*, 506 U.S. 390 (1993) (refusing to hold that incarceration of an actually innocent person violates the Eighth or Fourteenth Amendment, stating "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding"); *McQuiggen*, 569 U.S. at 384 ("We have not resolved whether a prisoner may be entitled to habeas corpus relief based on a freestanding claim of actual innocence").

Rouse relies upon the recantations of the alleged victims and on the expert testimony presented in his motion for leave to file a successive petition.   The Eighth Circuit has interpreted the new evidence requirement of *Schlup* to require not only evidence unavailable at trial, but "new reliable evidence which was not available at trial through the exercise of due diligence." *Kidd v. Norman,* 651 F.3d 947, 953 (8th Cir. 2011*). See also McQuiggen*, 569 U.S. at 399-400 (holding that a petitioner's diligence is a factor that may be considered in evaluating the merits of an actual innocence gateway claim). The alleged recantations have been available to Rouse since 2001, seventeen years ago.   Moreover, as previously discussed, those recantations have already been determined not to be credible by the trial court.   The expert testimony upon which Rouse relies has been

available to him since 2015 at the very latest.  Rouse does not provide any justification for waiting to present that evidence to this Court until now. "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggen*, 569 at 385.

The supposed "new evidence" offered here is not sufficiently reliable to make the extraordinary showing required for a gateway actual innocence claim. The victims' recantations were determined not to be credible after the Court held a four-day evidentiary hearing in 2001.  Nor does the new expert testimony satisfy the requirement that "no reasonable juror" would have convicted the defendants if they had heard the testimony.[7]  Movants already presented evidence at trial regarding the suggestibility of children when interrogated by adults.  That evidence was unpersuasive to the jury.

The new recantations do not explain the initial report of sexual abuse, which was made to one of the children's foster mothers.  Nor do they address the spontaneous statements the children made during the medical examinations. During Jessica Rouse's medical exam by Dr. Kaplan, she stated "Uncle Jesse hurt me" and when asked where, pointed to her left labia.  *Rouse*, 329 F. Supp. 2d at 1090.  When Jessica Rouse's anal opening was examined, she stated that Uncle Jess has used his hand in her butt. *Id.*  She was four and a half years old

---

[7] The evidence presented by the government at the evidentiary hearing on the alleged recantations should also be considered in making this determination. "*Schlup* makes plain that the habeas court must consider "'all the evidence,' " old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House*, 547 U.S. at 538.  When that evidence is considered, the impact of Rouse's new evidence is further weakened.

at the time. *Id.* Similarly, when Dr. Kaplan examined Lucritia Rouse, she told him to "check my peach" because it hurt. *Id.* During Dr. Kaplan's examination of then five year old Rosemary Rouse, she volunteered spontaneously that "I have a bruise where my uncle put his private spot" and volunteered that her uncle Garfield did this at her Grandma's house. *Id.* Rosemary also volunteered that her uncle put his private "in my butt." *Id.* When Dr. Kaplan examined Thrista Rouse, who was seven years old, she told Dr. Kaplan that "Uncle Jesse hurt me there" in reference to her inner labia majora. *Id.* These reports were made before the victims were interviewed by the FBI and before they began counseling sessions. *Id.* at 1091.

The recantations also do not explain the statements that the children made in therapy regarding sexual abuse. Counselors at the Children's Home Society reported that the children continued to describe sexual abuse to them after the trial and before they were returned home. *Id.* at 1081.

When examined in light of the evidence as a whole, which includes the evidence presented by the government at the evidentiary hearing on the motion for a new trial based on the recantations, Rouse cannot establish that "no reasonable juror" would have voted to convict him if the new evidence had been admitted.

## **CONCLUSION**

Rouse's Rule 60(b)(6) motion is really a successive § 2255 motion. The Eighth Circuit Court of Appeals has already denied Rouse leave to file a successive motion to vacate, correct, or set aside his conviction on grounds

28

identical to those advanced here.  Accordingly, Rouse is not entitled to pursue relief under Rule 60(b)(6).

Even if Rouse's Rule 60(b)(6) motion were not an unauthorized successive § 2255 motion, he cannot establish the "extraordinary circumstances" necessary to justify vacating his conviction.  The "newly discovered" expert testimony upon which Rouse relies is not presented to this Court within a reasonable time, as required by Rule 60(c)(1).  *Peña-Rodriguez* is not retroactive to cases on collateral review, precluding Rouse from seeking relief on that basis under Rule 60(b)(6), because the United States Supreme Court did not create the first watershed rule of criminal procedure when it decided *Peña-Rodriguez*. The witness alleging racial discrimination by the jury was not a member of the jury, unlike the witnesses in *Peña-Rodriguez* or its progeny. She has also previously been determined to be less credible than the juror herself.  Likewise, the discredited recantations of the victims do not justify relief.  Rouse also fails to make the "extraordinary" showing required to make a gateway actual innocence claim. None of the evidence or arguments presented justify disturbing the verdict that the jury reached in this case over twenty years ago.

WHEREFORE, the United States respectfully requests that this Court deny Rouse's Rule 60(b)(6) motion.

Dated this 28th day of August, 2018.

RONALD A. PARSONS, JR.
United States Attorney

*/s/ Delia M. Druley*

DELIA M. DRULEY
Assistant U.S. Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
Phone:  605.357.2320
Fax:  605.330.4402
Delia.Druley@usdoj.gov

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of D.S.D. Civ. LR 7.1(B)(1) because it contains 8,058 words.

Dated this 28th day of August, 2018.

*/s/ Delia M. Druley*

DELIA M. DRULEY
Assistant U.S. Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
Phone:  605.357.2320
Fax:  605.330.4402
Delia.Druley@usdoj.gov