UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

*******************************************************************

|  |  |  |
|---|---|---|
| DESMOND ROUSE and JESSE ROUSE, | * | CIV 06-4008 |
| | * | |
| Petitioners, | * | |
| | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| vs. | * | |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | * | |
| | * | |

*******************************************************************

This matter is before the Court on Petitioners Desmond Rouse and Jesse Rouse's motion for a new trial. (Doc. 13.) At the request of Petitioners, their motions for new trial were consolidated with all further filings to be made in CIV 06-4008. (Doc. 42.) The United States opposes Petitioners' motion for new trial. (Doc. 30.)

Petitioners seek an order granting them a new trial or, in the alternative, granting a hearing on the merits of their motion and an order allowing them to interview the trial jurors in their criminal case. (Doc. 13.) They seek this relief under Federal Rule of Civil Procedure 60(b)(6). (Doc. 18.) The Government notes that this is one of many substantive post-conviction pleadings filed by Petitioners, and the Government argues that this motion should be dismissed because it amounts to an unauthorized successive 28 U.S.C. § 2255 motion and because Petitioners' claims lack merit.

After careful consideration, the Court denies Petitioners' motion for new trial.

## BACKGROUND

Following a three-week jury trial in this Court, Petitioners were convicted on several counts of aggravated sexual abuse in violation of 18 U.S.C. § 2241(c). Petitioners are Native American men. Another Native American man was acquitted.

1

After trial, the Clerk's Office received a call from a co-worker of juror Patricia Pickard. The co-worker, Verna Boyd (then Severson), said that Patricia Pickard was prejudiced against Native Americans. This Court notified counsel for Petitioners and held four separate hearings on the alleged juror misconduct. *See* CR 94-40015, Doc. 323-1. Pursuant to Federal Rule of Evidence 606(b), the Court instructed the attorneys not to contact any of the jurors, and the jurors were not allowed to testify about any statement made or incident that occurred during deliberations. In addition to hearing the testimony of Boyd and Pickard, the Court heard testimony from the jury foreperson, the alternate juror, and multiple co-workers of Pickard. The Court ultimately concluded that juror Pickard had "responded honestly and accurately" during voir dire and had not concealed "any racially prejudiced attitudes, beliefs, or opinions" about Native Americans. Doc. 323 at 11. The Court found that "as between juror Pickard and Ms. [Boyd], juror Pickard [was] the more credible witness." *Id.* The Court further found that the jury foreman and an alternate juror testified credibly "that they did not hear juror Pickard or any other juror make racially disparaging remarks about the defendants or about Native American people during the trial," *id.* at 14, and "that no improper outside influence affected the jury." *Id.* at 5. Petitioners' motion for a new trial was denied. *Id.*

On direct appeal, a divided panel of the Eighth Circuit initially reversed and remanded for a new trial, holding that his Court erred in rejecting expert testimony that the children's testimony regarding sexual abuse had been coerced by the adults in the case. *See United States v. Rouse*, 100 F.3d 560, 566 (8th Cir. 1996). However, the Eighth Circuit panel granted rehearing and affirmed the exclusion of the proposed expert testimony, and it affirmed this Court's denial of the motion for new trial which was based upon co-worker Boyd's testimony. *United States v. Rouse*, 111 F.3d 561, 573 (8th Cir. 1997) (holding in part that this Court's findings on the motion for new trial established that no new trial was warranted because of juror Pickard's responses during voir dire).

The facts underlying Petitioners' convictions are described in the Eighth Circuit's opinion affirming the convictions after rehearing. Petitioners, who are brothers, and their two cousins were convicted of sexually abusing young female relatives on the Yankton Sioux Indian Reservation:

> The victims are granddaughters of Rosemary Rouse. During the summer and fall of 1993, defendants lived at Rosemary's home on the Yankton Sioux Reservation. The victims also lived or spent a great deal of time at this home. In October 1993, five-year-old R.R. was placed with Donna Jordan, an experienced foster parent, due to neglect and malnutrition.

R.R. disclosed apparent sexual abuse to Jordan, who reported to the Tribe's Department of Social Services ("DSS") (as Jordan was required to do) that R.R. said she had been sexually abused. On January 10, 1994, DSS told Jordan to take R.R. to therapist Ellen Kelson. After an initial interview, Kelson reported to DSS (as Kelson was required to do) that R.R. had reported acts of sexual abuse against herself and other children in the Rouse home. On January 11, DSS removed thirteen children living in the Rouse home and placed them in Jordan's foster home. Of the four who disclosed sexual abuse by their uncles, T.R. was seven years old, L.R. was six, R.R. was five, and J.R. was four and one-half. The fifth victim of the alleged offenses, F.R., was a twenty-month-old infant.

*Rouse*, 111 F.3d at 565.

The children were examined by two physicians, Richard Kaplan and Robert Ferrell, who found physical injuries consistent with sexual abuse. The evidence at trial included the testimony of the four oldest children and another child who witnessed acts of abuse, medical evidence, medical experts for the government and for the defense, and the testimony of an FBI agent and a BIA criminal investigator, both who interviewed the children. *Id.* at 566. Petitioners also presented numerous lay witnesses in support of their defense at trial.

In 1999, Petitioners filed a second motion for a new trial pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure based on recantations of the victims.[1] *See* CR 94-40015, Doc. 428. This Court held a four-day evidentiary hearing in 2001. *See United States v. Rouse*, 329 F. Supp.2d 1077 (D.S.D. 2004). Jessica, Thrista, Lucritia and Rosemary Rouse testified that the abuse did not occur. Experts and several other witnesses testified. This Court concluded that the recantations were not credible. *Id.* The Eighth Circuit affirmed that finding:

> After reviewing the record as a whole, we conclude that the district court's credibility findings are not clearly erroneous and the denial of the new trial motion was not a clear abuse of discretion. By the time of the evidentiary hearing, the children had been living with their mothers for at least two years, within walking distance of their grandmother's home. These women never believed the children's accusations, and testified on the defendants' behalf at trial. The children knew their grandmother and mothers missed the defendants. The children saw letters written by the uncles from prison and spoke to the men by telephone. Family members drove the children to interviews by Dr. Underwager, whose stated purpose was to free their uncles from lengthy prison sentences. The district court's finding that the recantations were the product of family pressure and therefore not credible is overwhelmingly supported by this record. Combined with the defendants' failure to refute the powerful medical evidence of abuse at trial, this finding fully justified the court's conclusion "that there is no reasonable probability that the recantations would

---

[1] Fury Rouse was only 20 months old at the time of the abuse and did not testify at trial and thus did not recant.

produce an acquittal if a new trial were held." Accordingly, the district court did not abuse its discretion in denying the defendants' joint motion for a new trial.

*United States v. Rouse*, 410 F.3d 1005, 1009 (8th Cir. 2005).

On November 24, 1998, Jesse Rouse filed his first motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, arguing ineffective assistance of trial counsel. *See* CIV 98-4213, Doc. 1. The motion was denied as untimely. *Id.* at Doc. 17.

In 2006, Desmond Rouse filed his first pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) Desmond Rouse alleged that he is innocent, but he did not identify the constitutional grounds for his motion. That motion was filed more than seven years after the deadline, and it was denied as untimely. (Doc. 8.)

Petitioners filed the pending motion for new trial on March 7, 2018. The Court held argument on the motion on October 31, 2018. Pre-hearing and post-hearing briefs were filed by the parties. The motion is now ready for a ruling.

## CLAIMS PRESENTED

The current 60(b)(6) motion lists two grounds for relief. Petitioners first rely on the United States Supreme Court's decision in *Peña-Rodriguez v. Colorado*, – U.S. – , 137 S. Ct. 855 (2017). There, the Supreme Court held that the "no impeachment" evidence rule for jurors must yield to the Sixth Amendment when a juror makes a clear statement that indicates he or she relied on racial stereotypies or animus to convict. *See* 137 S.Ct. at 869. The trial court may then examine the evidence and any resulting denial of the Sixth Amendment jury trial right. *See id.* In their motion for new trial, Petitioners again seek to develop evidence in support of their claim that the jury may have relied on racial prejudice to convict them.

Petitioners' second ground for relief is that new evidence makes them "actually innocent" and exonerates them from their convictions and sentence. First, there is evidence that the victims, who are now adults, are recanting their trial testimony. Second, Petitioners rely on experts who submitted affidavits opining that significant changes in the field of sexual abuse in children show that the forensic medical evidence of sexual abuse that was presented at trial was inaccurate, misleading and potentially false. Petitioners' experts criticize the physical examinations conducted by Dr. Ferrell and Dr. Kaplan. Citing *Schlup v. Delo*, 513 U.S. 298 (1995), Petitioners argue that

no reasonable unbiased juror hearing this new evidence would convict Petitioners and, therefore, the Court ought to allow Petitioners to proceed to the merits of their claims.

## DISCUSSION

### Applicable Law

Federal Rule of Civil Procedure 60(b)(6) allows a district court to grant relief from a final judgment, order, or proceeding for any reason that justifies relief. *See* Fed. R. Civ. P. 60(b)(6). The Eighth Circuit has described the purpose of Rule 60(b):

> Rule 60(b) was intended to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts. Thus, the Rule is intended to prevent the judgment from becoming a vehicle of injustice.

*Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509, 515 (8th Cir. 1984) (internal quotations and citations omitted). A Rule 60(b)(6) motion must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

District courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings so long as the motion attacks not the substance of the court's resolution of the claim on the merits, but some defect in the integrity of the habeas proceedings. *See Gonzalez v. Crosby,* 545 U.S. 524, 532 (2005). *Gonzalez* involved a habeas petition under 28 U.S.C. § 2254, but because § 2254 and § 2255 are nearly identical in substance, the Eighth Circuit applies *Gonzalez* to Rule 60(b) motions to reopen § 2255 proceedings. *See United States v. Lee,* 792 F.3d 1021, 1023–25 (8th Cir. 2015) (using *Gonzalez* to determine if a Rule 60(b) motion was a successive § 2255); *Davis v. United States,* 417 U.S. 333, 343 (1974) (section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus"). Examples of Rule 60(b) motions that properly raise a defect in the integrity of the habeas proceedings include a claim of fraud on the court or challenges to a procedural ruling that precluded a merits determination, such as failure to exhaust, procedural default, or time bar. *Gonzalez,* 545 U.S. at 532 nn. 4, 5. Courts are directed to use their broad powers under Rule 60(b)(6) only in "extraordinary circumstances" which "rarely occur" in the habeas context. *Davis v. Kelley,* 855 F.3d 833, 835 (8th Cir. 2017). *See also Gonzalez v. Crosby,* 545 U.S. 524, 535 (2005) (noting that Rule 60(b) "authorizes relief in only the most exceptional cases"). "In determining whether extraordinary circumstances are present, a court

may consider a wide range of factors. These may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.' " *Davis v. Kelley*, 855 F.3d at 835 (quoting *Buck v. Davis*, – U.S. – , 137 S.Ct. 759, 778 (2017)).

The law limits a defendant to one § 2255 motion unless he obtains certification for a successive motion from the Court of Appeals. *See* 28 U.S.C. §§ 2244, 2255(e), (h); *Gonzalez*, 545 U.S. at 528 (addressing § 2254). Because of the relative lenience of Rule 60(b), petitioners "sometimes attempt to file what are in fact second-or-successive habeas petitions under the guise of Rule 60(b) motions." *In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017) (citing *Gonzalez*, 545 U.S. at 531–32).

The Eighth Circuit recognized that prisoners had begun to use Rule 60(b) motions to avoid the authorization requirement and instructed district courts to employ a screening procedure on Rule 60(b) motions. *Boyd v. United States*, 304 F.3d 813, 814 (8th Cir. 2002) (per curiam); *United States v. Lambros*, 404 F.3d 1034, 1036 (8th Cir. 2005) (per curiam) ("It is well-established that inmates may not bypass the authorization requirement of 28 U.S.C. § 2244(b)(3) for filing a second or successive § 2254 or § 2255 action by purporting to invoke some other procedure.").

In *Boyd*, the Eighth Circuit instructed:

> [W]e encourage district courts, in dealing with purported Rule 60(b) motions following the dismissal of habeas petitions, to employ a procedure whereby the district court files the purported Rule 60(b) motion and then conducts a brief initial inquiry to determine whether the allegations in the Rule 60(b) motion in fact amount to a second or successive collateral attack under either 28 U.S.C. § 2255 or § 2254. If the district court determines the Rule 60(b) motion is actually a second or successive habeas petition, the district court should dismiss it for failure to obtain authorization from the Court of Appeals or, in its discretion, may transfer the purported Rule 60(b) motion to the Court of Appeals. Depending on which course of action the district court chooses, the petitioner may either appeal the dismissal of the purported Rule 60(b) motion or, if the district court has elected to transfer the purported 60(b) motion to the Court of Appeals, await the action of the Court of Appeals.

*Boyd*, 304 F.3d at 814. In the present case, Petitioners sought authorization from the Eighth Circuit to file another § 2255 motion but the Court denied authorization. *See In re Desmond Rouse*, No. 18-1478, Doc. 4668455 (8th Cir. June 4, 2018) (Judgment). Accordingly, Petitioners' motion

under Rule 60(b)(6) must be dismissed if it is effectively a successive habeas petition. *Boyd,* 304 F.3d at 814.

## 1. Effect of Peña-Rodriguez v. Colorado, – U.S. – , 137 S. Ct 855 (2017)

In *Peña-Rodriguez*, the Supreme Court created a narrow exception to the no-impeachment rule found in Federal Rule of Evidence 606(b).[2] The Court held that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires . . . the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." 137 S.Ct. at 869. The Court's decision addresses only what a court must do when presented with evidence of racial bias; it does not address how or when a criminal defendant may seek to obtain evidence of racial bias. The Court noted that the methods of investigating potential racial animus remain governed by local rules. *See id.* ("The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors.").

Invoking *Peña-Rodriguez*, Petitioners argue that the Court should allow them to interview jurors from their trial to determine if racism played a part in their convictions, without the restriction of the no-impeachment rule in Federal Rule of Evidence 606(b) preventing inquiry into comments made in the jury room.

---

[2] Rule 606(b) provides:

**(b) During an Inquiry Into the Validity of a Verdict or Indictment.**
  **(1) Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
  **(2) Exceptions.** A juror may testify about whether:
      **(A)** extraneous prejudicial information was improperly brought to the jury's attention;
      **(B)** an outside influence was improperly brought to bear on any juror; or
      **(C)** a mistake was made in entering the verdict on the verdict form.

Fed. R. Evid. 606(b). The rule preventing inquiry into comments made in the jury room is known as the "no-impeachment rule."

In response, the Government urges that 1) the Court lacks jurisdiction to decide Petitioners' Rule 60(b)(6) motion because it is in reality a second or successive § 2255 petition, 2) *Peña-Rodriguez* is not retroactive, 3) the "new evidence" of alleged racial discrimination is not sufficiently reliable to justify departing from the no impeachment rule, and 4) the prior proceedings were sufficient to ensure Petitioners had a fair trial and that racial bias did not affect the jury's deliberations.

### a. Successive § 2255 Petition

The first question the Court must address is whether this is a legitimate Rule 60(b)(6) motion or if it is in reality an unauthorized second or successive § 2255 without the necessary permission of the Eighth Circuit. A motion pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure can be a "second or successive petition" requiring the authorization of the Eighth Circuit Court of Appeals if it contains a claim. *Ward v. Norris,* 577 F.3d 925, 933 (8th Cir. 2009). "For the purpose of determining whether the motion is a habeas corpus application, claim is defined as 'an asserted federal basis for relief from a state court's judgment of conviction' or as an attack on the 'federal court's previous resolution of the claim on the merits.'" *Davis v. Kelley,* 855 F.3d at 835 (quoting *Gonzales,* 545 U.S. at 530, 532). Conversely,

> No claim is presented if the motion attacks some defect in the integrity of the federal habeas proceedings. Likewise, a motion does not attack a federal court's determination on the merits if it merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute of limitations bar.

*Ward,* 577 F.3d at 933 (internal quotes omitted).

Petitioners raised the jury prejudice claim in their first motion for a new trial. This Court held four separate hearings on the claim and issued an Order denying the motion for new trial based on juror bias. Petitioners seek to distinguish that claim from their current jury bias claim, arguing that their new claim is based on the subsequent change in the law under *Peña-Rodriguez.* The gravamen of Petitioners' argument is that because Federal Rule of Evidence 606(b) prohibited jurors from being questioned about potential racial bias during deliberations, no decision was reached by this Court on the merits of their claim that juror bias infected the deliberations in this case. Petitioners also argue that *Peña-Rodriguez* qualifies as an extraordinary circumstance that makes Rule 60(b)(6) the appropriate mechanism to address this issue.

8

The Court concludes that Petitioners are trying to present a new reason why they should be relieved of their convictions. Petitioners are not trying to reopen their initial §2255 petitions and overcome a procedural barrier to their adjudication. Rather, they are attacking this Court's previous resolution of the jury bias claim. Eighth Circuit precedent precludes reconsideration of Petitioners' jury bias claim based on Petitioner's new argument.

In *Thompson v. Nixon*, 272 F.3d 1098 (8th Cir. 2001), the petitioner filed a motion to recall the mandate claiming that a recent Supreme Court decision allowed him to bypass the limit on second or successive petitions set forth in § 2244(b)(1). *Id.* at 1099. The petitioner argued in his first habeas petition that he was convicted under incorrect jury instructions and was therefore entitled to post-conviction relief. *Id.* at 1100. The Eighth Circuit affirmed the district court's denial of the petition challenging the jury instruction. *Id.* at 1101. Petitioner filed a subsequent habeas petition with the district court again challenging the jury instruction. *Id.* The district court determined that the claim was successive and dismissed the claim. *Id.* The petitioner filed an Application for a Certificate of Appealability with the Eighth Circuit, arguing that the Missouri Supreme Court had held the jury instruction erroneous and claiming that the incorrect jury instruction denied him due process under the Fourteenth Amendment. *Id.* The Eighth Circuit denied the petitioner's application. *Id.*

Subsequently, the United States Supreme Court issued a decision suggesting that a new interpretation of a state criminal statute that merely clarifies the statute should apply to cases on collateral review.[3] *Id.* at 1099. The petitioner then filed a motion to recall the mandate in the Eighth Circuit, arguing that Missouri Supreme Court decisions finding the jury instruction erroneous must be applied retroactively in order to comply with the Due Process Clause. *Id.*

The power to recall a mandate, like granting a motion under Rule 60(b)(6), is limited to "extraordinary circumstances." *Id.* at 1100. The Eighth Circuit held that the issuance of the Supreme Court decision "does not necessarily meet this standard," stating: "New decisions will of course be handed down by the Supreme Court each year. If we were to adopt [petitioner's]

---

[3] The decision is *Fiore v. White*, 531 U.S. 225 (2001) (per curiam).

argument, every new Supreme Court decision could be considered an 'extraordinary circumstance' and a sufficient basis to recall a mandate." *Id.*

The Eighth Circuit went on to address the petitioner's argument that the Missouri Supreme Court decisions holding that the jury instruction given in his case was incorrect, and the United States Supreme Court decision requiring that the state-court decisions be applied retroactively, supported his right to habeas relief. The Eighth Circuit rejected this reading of § 2244(b)(1), concluding that the Supreme Court decision "simply provides a new argument (the merits of which we need not explore) in support of the same [constitutional] claim that has been presented twice before." *Id.* at 1102.

Similarly, *Peña-Rodriguez* simply provides a new argument in support of Petitioners' jury bias claim which this Court has already adjudicated on the merits, and the Eighth Circuit affirmed.[4] After conducting four separate hearings on the alleged juror bias, this Court was satisfied that racial bias did not affect the jury's decisions in this case. The Court finds Petitioners' allegations amount to a second or successive collateral attack under § 2255 as Petitioners "in effect ask[ ] for a second chance to have the merits determined favorably." *Ward v. Norris*, 577 F.3d at 933 (quoting *Gonzalez*, 545 U.S. at 532 n. 5). Thus, Petitioners' jury bias claim that has already been rejected by this Court, and the Eighth Circuit, is barred as a successive petition under § 2244(b)(1). *See* 28 U.S.C. § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.").

To be clear, the Supreme Court has not foreclosed the possibility that a change in the law may supply an extraordinary circumstance justifying Rule 60(b)(6) relief. In *Gonzalez*, the Supreme Court held that a new interpretation of the statute of limitations in the Antiterrorism and Effective Death Penalty Act ("AEDPA") did not constitute extraordinary circumstances warranting relief. 545 U.S. at 536–37. The Court observed that "not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final," but that "[a] change in the interpretation of a substantive statute may have

---

[4] Furthermore, Petitioners made this same argument to the Eighth Circuit when they petitioned for authorization to file a second or successive habeas, and the Eighth Circuit declined authorization.

consequences for cases that have already reached final judgment, particularly in the criminal context." 545 U.S. at 536, and n. 9.

The Supreme Court's holding in *Peña-Rodriguez* did not change the interpretation of a substantive statute. As the Eleventh Circuit has held, *Peña-Rodriguez* did not create a new substantive rule; rather, it created a new procedural mechanism for challenging a jury verdict. *See Tharpe v. Warden*, 898 F.3d 1342, 1345–46 (11th Cir. 2018). Furthermore, the holding in *Peña-Rodriguez* does not rise to the level of extraordinary circumstances justifying Rule 60(b)(6) relief here. If the new interpretation of the statute of limitations in the AEDPA did not constitute extraordinary circumstances warranting relief in *Gonzalez*, the new narrow exception to the no-impeachment rule in *Peña-Rodriguez* does not qualify as an extraordinary circumstance justifying Rule 60(b)(6) relief in this case.

For these reasons, Petitioners' Rule 60(b)(6) motion based on *Peña-Rodriguez* is a successive § 2255 and it must be dismissed.

### b. Non-Retroactivity of *Peña-Rodriguez*

Even assuming Petitioners' claim of racial bias by the jury was not presented and decided on the merits, and assuming that the *Pena-Rodriguez* decision is an extraordinary circumstance, the holding in *Peña-Rodriguez* is not retroactive and thus does not apply to Petitioners. Where a Supreme Court decision recognizes a new procedural right but does not make it retroactively applicable to cases on collateral review, a defendant whose conviction and sentence became final before the decision was announced cannot file a § 2255 motion challenging his conviction or sentence based upon that newly recognized right. *See, e.g., Davis v. Norris*, 423 F.3d 868, 879 (8th Cir. 2005) (petitioner could not bring a second or successive petition on a claim that relied on new law when it was not presented in a prior application "unless the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable") (quoting 28 U.S.C. § 2244(b)(2)(A)).

Only the Supreme Court can decide that a new rule of constitutional law is retroactive for final convictions. *Tyler v. Cain*, 533 U.S. 656, 662 (2001). The Supreme Court has not decided whether *Peña-Rodriguez* announced "a new rule of constitutional law, made retroactive to cases on collateral review . . . that was previously unavailable." 28 U.S.C. §2255(h)(2). In a dissenting

opinion filed in *Tharpe v. Sellers*, – U.S.– , 138 S.Ct. 545, 551 (2018) (per curiam) (Thomas, J., dissenting), Justice Thomas noted that "no reasonable jurist could argue that *Peña-Rodriguez* applies retroactively on collateral review." The dissent further stated that "[a] new rule does not apply retroactively unless it is substantive or a 'watershed rul[e] of criminal procedure.' " *Id.* (quoting *Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion)). Consequently, "[s]ince *Peña-Rodriguez* permits a trial court 'to consider [certain] evidence,' and does not 'alte[r] the range of conduct or the class of persons that the law punishes,' it cannot be a substantive rule." *Id.* (citations omitted).

At least one Circuit Court has held that *Peña-Rodriguez* is not retroactive. *See Tharpe v. Warden*, 898 F.3d at 1346. Invoking *Peña-Rodriguez*, Tharpe, a state prisoner, sought postconviction relief in federal district court, arguing that a juror's racial bias influenced the guilty verdict in his trial. *Tharpe*, 898 F.3d at 1344. The Eleventh Circuit denied relief to Tharpe, holding that *Peña-Rodriguez* did not apply retroactively. The Court found that *Peña-Rodriguez* did not create a new substantive rule; rather, it created a new procedural mechanism for challenging a jury verdict. *Id.* at 1345–46. The Eleventh Circuit held that this new procedural rule did not rise to the level of a watershed, *id.* at 1346, and it denied a certificate of appealability. *See id.* at 1347.

This Court agrees with the reasoning of the Eleventh Circuit in *Tharpe* and finds that *Peña-Rodriguez* is not retroactive. Petitioners do not argue that *Peña-Rodriguez* is substantive, and they have not shown that it is a watershed rule of criminal procedure that implicates fundamental fairness, which is an "extremely narrow" exception to non-retroactivity. *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004).

Petitioners rely on the Supreme Court's decision in *Buck v. Davis*, — U.S. —, 137 S.Ct. 759 (2017), to argue that *Peña-Rodriguez* is significant new law that should allow them to reopen their juror racial bias claim under Rule 60(b)(6). The reliance on *Buck* is misplaced. *Buck* does not hold that the change in law at issue in that case by itself constituted an extraordinary circumstance that justified relief under Rule 60(b)(6). Rather, the Supreme Court found that three other extraordinary circumstances justified relief.

In *Buck*, a capital case, the defendant's lawyer presented an expert witness during the penalty phase of trial whose report stated that because defendant Buck was black, there was an "increased probability" that he was likely to pose a danger in the future. 137 S.Ct. at 768. Although

the expert concluded that Buck himself was unlikely to pose a danger, the expert's report was admitted into evidence, and the expert testified about the race factor. *Id.* at 768–69. Buck's first collateral petition in state court did not claim his trial counsel was ineffective for introducing this expert testimony, but his § 2254 federal petition did. *Id.* at 769–71. The district court rejected this ineffective assistance of counsel claim as procedurally defaulted. *Id.* at 770–71. Subsequently, a change in the law of procedural default was effected by the Supreme Court in *Martinez v. Ryan*, 566 U.S. 1 (2012) (holding when a state formally limits the adjudication of claims of ineffective assistance of trial counsel to collateral review, a prisoner may show cause for procedural default if (1) "the state courts did not appoint counsel in the initial-review collateral proceeding," or "appointed counsel in [that] proceeding . . . was ineffective under the [*Strickland*] standards;" and (2) "the underlying . . . claim is a substantial one, which is to say that . . . the claim has some merit"), and *Trevino v. Thaler*, 569 U.S. 413 (2013) (holding that the exception announced in *Martinez* extended to state systems that, as a practical matter, deny criminal defendants "a meaningful opportunity" to pursue ineffective assistance claims on direct appeal).

After *Martinez* and *Trevino*, Buck filed a Rule 60(b)(6) motion seeking to reopen his § 2254 case. *Buck*, 137 S.Ct. at 771–72. After the district court denied relief, the Fifth Circuit denied a certificate of appealability. *Id.* at 771–74. Reversing, the Supreme Court determined that the district court had abused its discretion in denying Buck's Rule 60(b)(6) motion. *Id.* at 776–77, 780. The claim of ineffective assistance of counsel presented in the petition could now be considered on the merits instead of being dismissed as procedurally defaulted. *Buck*, 137 S.Ct. at 771-72. The Supreme Court found the requisite "extraordinary circumstances" to justify relief under Rule 60(b)(6) because of three factors: it was a death penalty case, the underlying claim involved a "pernicious" race-based claimed injury that harmed the petitioner and the entire community, and the State of Texas admitted error and consented to resentencings in similar cases but refused to admit error in Buck's case. *Id.* at 777–80. In his dissent, Justice Thomas noted that the majority's opinion "relies on a convergence of three critical factors that will rarely, if ever, recur." *Id.* at 785–86.

Petitioners' circumstances are not similar to those found extraordinary in *Buck*. The information received from juror Pickard's co-worker was troubling and required inquiries into juror prejudice to the extent allowed under the law, but the extraordinary circumstances in *Buck*

are not present here. This is not a death penalty case, the underlying claim does not involve clearly racially-prejudiced expert testimony that harmed Petitioners and the entire community, and there is no governmental admission of error in similar cases.

In addition, Petitioners' case differs procedurally from *Buck* because this Court has heard and decided their claim of juror racial bias on the merits, and the Eighth Circuit affirmed this Court's determination that racial animus was not involved in Petitioners' convictions. In *Buck*, the defendant was asking the court to address claims that earlier were found to be procedurally defaulted and never heard on the merits, but a subsequent change in the law announced in *Martinez* and *Trevino* altered that finding. Here, Petitioners' jury racial prejudice claim was not procedurally defaulted. Rather, Petitioners are offering a new argument and new law in support of a claim that has already been adjudicated by this Court on the merits and affirmed on appeal.

Furthermore, in *Buck* the state waived its argument that *Martinez* and *Trevino* should not apply retroactively to Buck's case. Here the Government has steadfastly argued that *Peña-Rodriguez* is not retroactive and does not apply to Petitioners.

For these reasons, the Court concludes that *Peña-Rodriguez* does not qualify as an extraordinary circumstance that entitles Petitioners to a new trial or to interview jurors under Rule 60(b)(6), and that the Supreme Court's decision in *Buck* does not open the door to Rule 60(b)(6) relief under the circumstances in this case. Accordingly, Petitioners' Rule 60(b)(6) motion based on *Peña-Rodriguez* is a successive § 2255 that must be dismissed.

### c. New Evidence of Alleged Racial Discrimination is Not an Extraordinary Circumstances

To the extent Petitioners' motion is not a successive § 2255 but a legitimate Rule 60(b)(6) motion, the more recent affidavit of Verna Boyd is not an extraordinary circumstance justifying 60(b)(6) relief. Although the affidavit could be considered some new evidence in support of their racial animus claim because, this time, Boyd reports what juror Pat Pickard allegedly told her happened or was said in the jury room, Petitioners nevertheless assert in their Rule 60(b) motion the same basis of relief asserted previously—that racial animus was a factor in the jurors' decision to convict. The underlying legal argument is the same and this new evidence does not change the core of the racial animus claim.

In addition, Boyd's new affidavit seems to differ from some of her sworn testimony before this Court. On October 25, 1994, Boyd testified in court that she knew of one derogatory thing that happened in the jury room. CR 94-40015, Doc. 278-1 at 53 (Transcript of Hearing on Court's Motion re: Juror Misconduct). In her affidavit dated February 23, 2018, over twenty years later, Boyd mentions three derogatory things Pickard told her occurred in the jury room. Doc. 18-13 at 1-2.

One of the derogatory things Boyd states in her 2018 affidavit that Pickard told her is "that one of the jurors commented during deliberations that all Native American men abuse little girls." *Id.* at 2. At the 1994 hearing, Boyd testified that Pickard mentioned a conversation with a social worker who told Pickard that Native American girls are used for sexual purposes. Doc. 278-1 at 21. Boyd admitted she did not know whether Pickard mentioned this type of comment in the presence of other jurors. Doc. 278-1 at 56. This is not necessarily contradictory, but it is less than clear if that was the one derogatory thing from the jury room that Boyd knew of in 1994.

In summary, Boyd's affidavit does not convince this Court that it erred when finding Boyd to be less credible than her juror co-worker, Pat Pickard. The new information provided by Boyd over 20 years later does not meet the high standard of "extraordinary circumstances" that would justify relief under Rule 60(b)(6) in this case.

### d. Prior Proceedings Sufficient

After careful review of the prior proceedings and the 2018 affidavit of Verna Boyd, the Court remains convinced that Petitioners received a fair trial and that racial bias did not affect the jury's deliberations or verdict.

In sum, the Court finds that Petitioners' *Peña-Rodriguez* claim in their Rule 60(b)(6) motion is a second or successive petition, brought without authorization from the Eighth Circuit, and therefore concludes that it lacks jurisdiction to entertain the motion.

### 2. Actual Innocence

Citing *Schlup v. Delo*, 513 U.S. 298 (1995), and *McQuiggen v. Perkins*, 569 U.S. 383 (2013), Petitioners attempt to overcome the bar to filing a second or successive § 2255 by arguing

that there is new evidence showing they are "actually innocent" of the crimes for which they were convicted.

In *Schlup,* the Supreme Court recognized that a habeas petitioner could present a claim of actual innocence as a "gateway" to resurrecting procedurally defaulted claims of constitutional error which occurred in the underlying trial, but "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324. Petitioners asserting innocence as a gateway to defaulted claims must establish that, considering the new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Supreme Court explained in *House v. Bell,* 547 U.S. 518 (2006), that the *Schlup* standard "is demanding and permits review only in the 'extraordinary' case. At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence." *House,* 547 U.S. at 538 (citations omitted).

In *McQuiggin,* the Supreme Court held that a state prisoner seeking federal habeas relief can overcome a statute of limitations defense by presenting proof of actual innocence. *See* 569 U.S. at 386 ("actual innocence, if proved, serves as a gateway through which a petitioner may pass" to avoid a statute of limitations defense). The gateway opens "only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (quoting *Schlup,* 513 U.S. at 316). The Court reaffirmed that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin,* 569 U.S. at 392.

The Supreme Court has yet to determine whether a freestanding actual innocence claim would render unconstitutional a conviction and sentence that is otherwise free of constitutional error. *Dansby v. Hobbs,* 766 F.3d 809, 816 (8th Cir. 2014); *McQuiggin,* 569 U.S. at 392 (acknowledging that Supreme Court had "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"); *District Attorney's Office v. Osborne,* 557 U.S. 52, 71 (2009) (stating that whether a federal constitutional right to be released

16

upon proof of "actual innocence" exists is an open question with which the Court has "struggled" over the years). *See also Herrera v. Collins,* 506 U.S. 390, 417 (1993) (assuming "that in a capital case, a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim").

The Supreme Court has established, however, that if such a claim were recognized, the threshold would be "extraordinarily high," *Dansby,* 766 F.3d at 816. The Eighth Circuit described the distinction between a "freestanding" actual innocence claim and actual innocence as a "gateway" to revive an otherwise defaulted habeas claim:

> The Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error. *See House v. Bell,* 547 U.S. 518, 554-55 (2006). The Court has established, however, that the threshold for any such claim, if it were recognized, would be "extraordinarily high." *Herrera v. Collins,* 506 U.S. 390, 417 (1993). The threshold, if it exists, would require "more convincing proof" than the "gateway" standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence. *House,* 547 U.S. at 555; *see Schlup v. Delo,* 513 U.S. 298, 315 (1995). Thus, on a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The "extraordinarily high" threshold, if recognized, would be even higher. *House,* 547 U.S. at 555.

*Dansby,* 766 F.3d at 816.

Here, Petitioners' assertion of innocence does not merely serve as a "gateway" to allow this Court to consider claims that would otherwise be procedurally barred. Rather, as noted earlier, Petitioners' claim is that they are actually innocent of the crimes for which they were convicted. In other words, Petitioners seek to establish that their actual innocence is itself the constitutional basis of their successive petition. The Court will assume for purposes of this motion that such a freestanding claim of actual innocence is recognized, and the Court will review the two types of purportedly new evidence that Petitioners rely on as evidence of their actual innocence: recantations and new medical experts.[5]

---

[5] Section 2255(h) bars federal prisoners from filing a second or successive § 2255 motion unless it has been "certified as provided in section 2244 by a panel of the appropriate court of appeals to contain . . . *newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable*

In *House v. Bell*, the Supreme Court elaborated on how a habeas court is to weigh evidence presented in support of a *Schlup* gateway actual innocence claim:

> *Schlup* makes plain that the habeas court must consider " 'all the evidence,' " old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under "rules of admissibility that would govern at trial." *See id.,* at 327–328, (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U. Chi. L.Rev. 142, 160 (1970)). Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do." 513 U.S., at 329, 115 S.Ct. 851. The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors. *Ibid.*
>
> \* \* \*
>
> A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt-or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.
>
> \* \* \*
>
> Because a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record. *See ibid.* If new evidence so requires, this may include consideration

---

*factfinder would have found the movant guilty of the offense.*" 28 U.S.C. § 2255(h)(1) (emphasis added). Petitioners presented the same new evidence to the Eighth Circuit in support of their petition to file a successive § 2255. They asked the Eighth Circuit to permit them to file a successive motion under *Schlup* and *McQuiggin* even if the Court found Petitioners failed to meet the § 2255(h) requirements. The Eighth Circuit summarily denied authorization to file a new § 2255 without discussion. *See In re Desmond Rouse*, No. 18-1478, Doc. 4668455 (8th Cir. June 4, 2018) (Judgment). The Eighth Circuit may have decided Petitioners failed to make a prima facie showing of the requirements for a successive § 2255. *See* 28 U.S.C. § 2244(b)(3)(C) ("The court of appeals *may* authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.") (emphasis added). Or the Eighth Circuit could have decided Petitioners failed to meet the *Schlup* requirements for a gateway actual innocence claim or to demonstrate the more convincing proof which would be required to meet the threshold for a freestanding actual innocence claim—assuming such a claim is cognizable as an avenue for relief. *Dansby*, 766 F.3d at 816. Because the Eighth Circuit did not explain why it denied authorization to file a successive petition, and keeping in mind both that the Eighth Circuit did not have access to the whole record, and that there was a 30-day statutory deadline for the Eighth Circuit to decide (here, the Eighth Circuit exceeded the deadline by 60 days), this Court will determine for itself whether Petitioners have supplied the proof necessary for an actual innocence claim. *See* 28 U.S.C. § 2244(b)(3)(D) (requiring the appellate court's decision within 30 days after the motion for a successive petition is filed).

of "the credibility of the witnesses presented at trial." *Ibid.; see also ibid.* (noting that "[i]n such a case, the habeas court may have to make some credibility assessments").

*House,* 547 U.S. at 538–39.

The Court will review the evidence in Petitioners' case, keeping in mind that a freestanding actual innocence claim would require "more convincing proof" than the "gateway" standard under *Schlup* that is set forth above. As stated earlier, Petitioners present two forms of new evidence: victim recantations and new medical experts.

### a. Recantations

Petitioners submitted affidavits of the victims indicating that they again are recanting their allegations of sexual abuse. According to Petitioners, the victims have no reason to falsely recant now because they are adults with their own families and homes and can no longer be manipulated by relatives.

After a four-day hearing in 2001, this Court found that the victims' earlier recantations would not have affected the outcome of the trial. *See United States v. Rouse,* 329 F.Supp.2d 1077, 1087–92 (D.S.D. 2004).[6]

As this Court noted earlier, recanted testimony is notoriously unreliable, and even more so when the testimony recanted implicates the witnesses' relatives. *See* 329 F.Supp.2d at 1087–88. The Eighth Circuit has repeatedly noted that recantations are viewed with suspicion. *United States v. Rouse,* 410 F.3d 1005, 1009 (8th Cir. 2005) ("We view with suspicion motions for new trial based on the recantation of a material witness because the stability and finality of verdicts would be greatly disturbed if courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at the trial.") (internal quotation and citation omitted).

Even if, as urged by Petitioners, the Court ignores the trial testimony of Dr. Ferrell and Dr. Kaplan regarding their physical findings of sexual abuse, enough other corroborating evidence of the abuse was presented at trial to leave the Court confident in the outcome even considering the new recantations. The victims' testimony at trial corroborated portions of other witnesses'

---

[6] The Court incorporates its findings and conclusions from its earlier decision herein.

testimony about the sexual abuse, including the foster mother who received the initial report of abuse from one of the victims and the federal investigators who were told by the victims that their uncles hurt them. Also, the trial testimony of Dr. Ferrell and Dr. Kaplan regarding spontaneous statements the children made to them was corroborative of the victims' testimony at trial.

The evidence and testimony presented at the 2001 evidentiary hearing on recantations further support a finding that the recent recantations are not as credible as the victims' trial testimony. The Court will not repeat all the evidence here, but an example is testimony from the children's counselors that the kids "continued to describe the acts of sexual abuse to them after the trial and before the children were returned home." 329 F.Supp.2d at 1081.

After considering the evidence presented at trial, the evidence presented during the 2001 evidentiary hearing, and the recent affidavits of the recanting victims, the Court cannot conclude that no reasonable juror would vote to convict Petitioners. A reasonable juror could conclude that the trial testimony was credible, and a reasonable juror could reject the earlier and the more recent recantations. In other words, a reasonable juror, considering all the evidence, old and new, still could have convicted Petitioners of sexual abuse. Thus, Petitioners fail to meet the burden required to pass through the *Schlup* actual innocence gateway (that it is more likely than not that no reasonable juror would have found Petitioners guilty beyond a reasonable doubt), and it necessarily follows that the recantations do not amount to the "more convincing proof" required for a freestanding actual innocence claim.

### b. Medical Experts

Petitioners submitted affidavits from new medical experts averring that significant changes in the field of sexual abuse in children show that the forensic medical evidence of sexual abuse that was presented at trial was inaccurate, misleading and potentially false. Petitioners' experts criticize the physical examinations for sexual abuse conducted by Dr. Ferrell and disagree with the findings of Dr. Ferrell and Dr. Kaplan. The Court indicated in an earlier Order that the only evidence it considers newly discovered evidence is the positions of Dr. Adams and Dr. Ophoven. (Doc. 43.) As a preliminary matter the Court determined that the proposed testimony of Dr. Adams and Dr. Ophoven is credible.

Petitioners sum up Dr. Ophoven's opinions:

Dr. Janis Ophoven, another expert with over 30 years of experience in the field of specializing in injuries to children, confirms that the criteria relied on by Dr. Ferrell was subjective and unreliable and led to unreliable findings of sexual assault based on hymen and anal dilatation, hymenal notches, nonspecific marks and areas of erythema [reddening], pigmentation, and vaginal ridging, when in fact these are all normal variations found in the examination of the anogenital anatomy in children.

Doc. 18 at 11 (citing Exhibit D #14, 19).

Dr. Adams is an expert in pediatric assessment of sexual assault in children. She opined, in summary, "that the criteria relied on by Dr. Ferrell are not signs of trauma at all, but normal internal structures for genitalia." *Id.* (citing Exhibit C #6a, 9).

It is the opinion of Dr. Ophoven and Dr. Adams that Dr. Ferrell was not qualified to conduct the examinations for sexual assault because he had no specialty in pediatrics or pediatric sexual assault. Further, the new experts take issue with Dr. Ferrell's failure to photograph his findings so they could be reviewed. Dr. Ferrell is an obstetrician/gynecologist specialist in Yankton, South Dakota. Doc. 46-1 at p. 3.

Petitioners allege that advances in the area of investigating child sexual abuse indicate that what Dr. Ferrell believed to be evidence of sexual abuse are actually normal findings. Dr. Adams opines "to a reasonable degree of medical certainty that if the children had been examined by an expert and with the current state of knowledge concerning normal anatomy, normal variations, and signs of trauma and abuse, then the findings [Dr. Ferrell] described would very likely be considered normal." Doc. 18-3 at ¶ 10.

The fact that Petitioners' experts disagree with Dr. Ferrell's opinions does not mean Dr. Ferrell's opinions were false as Petitioners assert. For example, in *Gimenez v. Ochoa*, the petitioner argued that the government's experts provided false testimony about the victim's cause of death by offering affidavits from his own new experts that purported to contradict the opinions presented at trial. 821 F.3d 1136, 1142–43 (9th Cir. 2016). In rejecting this claim, the Ninth Circuit noted that, "[t]o the extent that this new testimony contradicts the prosecution's expert testimony, it's simply a difference in opinion—not false testimony." *Id.* at 1142. Here, Petitioners present "a battle between experts" who hold different opinions about physical findings of sexual abuse. *Id.* at 1143. Although the Court does not know what Dr. Ferrell's testimony would be in a retrial, the Court does know what Dr. Kaplan's testimony would be on a retrial as Dr. Kaplan is deceased and

his trial testimony would be admissible into evidence. *See* Fed. R. Evid. 804(b)(1)(A) and (B) (explaining exception to the rule against hearsay for former testimony given as a witness at a trial when the party against who it is now offered had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination"). Dr. Kaplan was a pediatric medical doctor with an emphasis on child sexual abuse. Dr. Kaplan co-authored an article with Dr. Joyce Adams, one of Petitioners' new medical experts, entitled *Guidelines for Medical Care of Children Who May Have Been Sexually Abused.* (Doc. 18-3, Affidavit of Joyce A. Adams, M.D. at p. 25.) A summary of Dr. Kaplan's trial testimony was presented by the government in its brief in opposition to the motion for new trial:

> During Jessica Rouse's medical exam by Dr. Kaplan, she stated "Uncle Jesse hurt me" and when asked where, pointed to her left labia. *Rouse*, 329 F. Supp. 2d at 1090. When Jessica Rouse's anal opening was examined, she stated that Uncle Jess has used his hand in her butt. *Id.* She was four and a half years old at the time. *Id.* Similarly, when Dr. Kaplan examined Lucritia Rouse, she told him to "check my peach" because it hurt. *Id.* During Dr. Kaplan's examination of then five year old Rosemary Rouse, she volunteered spontaneously that "I have a bruise where my uncle put his private spot" and volunteered that her uncle Garfield did this at her Grandma's house. *Id.* Rosemary also volunteered that her uncle put his private "in my butt." *Id.* When Dr. Kaplan examined Thrista Rouse, who was seven years old, she told Dr. Kaplan that "Uncle Jesse hurt me there" in reference to her inner labia majora. *Id.* These reports were made before the victims were interviewed by the FBI and before they began counseling sessions. *Id.* at 1091.

Doc. 30 at 27-28.

*Gimenez* involved a petitioner convicted of murder based, in part, on the theory that the victim exhibited the triad of symptoms (subdural hematoma, brain swelling and retinal hemorrhage) once thought to definitively indicate a shaken baby (often referred to as "shaken baby syndrome," or "SBS"). 821 F.3d at 1143. The habeas petition in *Gimenez* was successive, and, therefore, subject to 28 U.S.C. § 2244(b). That led to the application of the clear and convincing evidence standard for a successive petition pursuant to 28 U.S.C. § 2244(b). *See id.* at 1145.

The Ninth Circuit in *Gimenez* recognized the petitioner's claim as a "gateway" rather than "freestanding" actual innocence claim based on a violation of due process. *Id.* at 1145 ("[H]abeas petitioners can allege a constitutional violation from the introduction of flawed expert testimony at trial if they show that the introduction of this evidence 'undermined the fundamental fairness of the entire trial.' "). The Court denied the petitioner relief, reasoning:

In any case, Gimenez can't prove by "clear and convincing evidence" that "no reasonable factfinder" would have found him guilty but for the introduction of purportedly flawed SBS testimony. 28 U.S.C. § 2244(b)(2)(B)(ii); *see Gage v. Chappell*, 793 F.3d 1159, 1168 (9th Cir. 2015). That inquiry requires courts to examine the alleged constitutional violation "in light of the evidence as a whole" at a petitioner's trial. 28 U.S.C. § 2244(b)(2)(B)(ii); *Jones v. Ryan*, 733 F.3d 825, 845 (9th Cir. 2013). A juror could still have concluded that Priscilla was shaken to death based on her numerous suspicious injuries, Gimenez's inconsistent statements about Priscilla's torn frenulum and his admitted violent behavior. Even assuming the prosecution's experts couldn't testify that the triad alone establishes SBS, the evidence Gimenez presents isn't enough to show by clear and convincing evidence that "no reasonable factfinder" would have found him guilty. *Jones*, 733 F.3d at 845; *Gage*, 793 F.3d at 1168.

*Gimenez*, 821 F.3d at 1145.

In the present case, Petitioners' new expert opinions criticizing Dr. Ferrell's opinion that his physical findings indicated the victims were sexually abused is not evidence that exonerates Petitioners. Dr. Ferrell's testimony was compelling, but the government's case did not depend solely on Dr. Ferrell's opinions. And even though more modern sexual abuse science led Petitioners' experts to a different conclusion, there was ample other evidence of Petitioners' guilt presented at trial. That sexual abuse occurred was independently corroborated by fact witness testimony. Had the jury heard the conflicting testimony of Dr. Ophoven and Dr. Adams, or had the jury not heard the testimony about Dr. Ferrell's physical findings, a reasonable juror viewing the record as a whole could still find Petitioners guilty. It cannot be said that Petitioners' newly proposed experts' opinions would more likely than not result in their acquittal if given a new trial.

Petitioners have failed to show that they meet the *Schlup* gateway standard because this Court cannot conclude that no reasonable juror would vote to convict Petitioners. Had the jury heard all the conflicting testimony, a reasonable juror viewing the record as a whole could still convict Petitioners. *Schlup*, 513 U.S. at 327. It follows that Petitioners also fail to meet the heightened standard of proving actual innocence on a freestanding innocence claim. Thus, no relief is available on the innocence claim.

**Combination of Factors**

To the extent Petitioners' motion can be considered a legitimate Rule 60(b)(6) motion rather than a successive § 2255, the Court will address Petitioners' argument that *Peña-Rodriguez* and the new evidence of racial bias by the jury, combined with the victim recantations and the new

medical evidence that Dr. Ferrell's physical findings might be normal rather than signs of sexual assault, amount to extraordinary circumstances justifying Rule 60(b)(6) relief.

In considering a Rule 60(b)(6) motion, a court must examine all the equitable circumstances in the case. *See Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005) ("Rule 60(b) is a motion grounded in equity and exists to prevent the judgment from becoming a vehicle of injustice.") (internal quotation and citation omitted). The Court has carefully considered all of the factors set forth by Petitioners, including those listed by Petitioners in their Pre-Hearing Brief, Doc. 33 at 2-4. Most of the items listed in the Pre-Hearing Brief involve the recantations and the new medical expert opinions as compared to the opinions of Dr. Kaplan and Dr. Ferrell.

The Court concludes that if the Petitioners' new medical and recantation evidence would have been presented at trial it would have established, at most, conflicting testimony. The jury would have been required to weigh the witnesses' credibility just as it did with the witnesses who testified at the trial, to determine whether reasonable doubt existed as to Petitioners' guilt. The Court does not conclude that no reasonable juror could have found Petitioners guilty even with the combination of new recantation and medical evidence.

The Court has already discussed why *Peña-Rodriguez* and Verna Boyd's affidavit are not extraordinary circumstances, and the Court concludes that those circumstances do not become extraordinary when they are considered together with the new recantation and medical evidence.

The Court also notes that the interest in finality is significant in this case where Petitioners were convicted, and their criminal judgments were entered, almost 25 years ago in 1995. *See* CR 94-40015, Docs. 340 and 347. Jesse Rouse's first § 2255 was denied as untimely on September 20, 1999. *See* CIV 98-4213, Doc. 17. Desmond Rouse's first § 2255 was denied as untimely on March 28, 2006. *See* CIV 06-4008, Doc. 8. The interest in finality of judgments is not the most important reason to deny relief, but the length of time that has passed since Petitioners' convictions weighs against granting relief, particularly when the Court believes that justice has been served in this case.

For all of these reasons the equitable considerations in this case do not favor Rule 60(b)(6) relief.

**Adverse Inference**

Petitioners filed a motion to compel the deposition of Dr. Robert Ferrell. (Doc. 38.) The government objected. (Doc. 41.) This Court denied the motion to compel Dr. Ferrell's deposition and instead ordered the government to provide an affidavit from Dr. Ferrell. (Doc. 43.) The Court explained that, with the credible proposed testimony of Dr. Adams and Dr. Ophoven, the current opinion of Dr. Ferrell regarding his findings of sexual abuse was necessary to assist the Court in ruling on the Petitioners' motion for new trial.

The government submitted a declaration from Assistant U.S. Attorney Delia Druley in which she described unsuccessful efforts to obtain an affidavit from Dr. Ferrell. (Doc. 46.) No affidavit has been submitted. Petitioners moved for the Court to draw an adverse inference in their favor and against the government that: 1) Dr. Ferrell has abandoned his testimony at the criminal trial that, in examining the victims in this case, he observed physical evidence of sexual assault, and 2) that if Dr. Ferrell testified today, he would not testify that his examinations of the victims demonstrated evidence of sexual assault. (Doc. 50.) The government objects to an adverse inference. (Doc. 54.)

The Court denies Petitioners' request for the adverse inference. There are numerous possible reasons that Dr. Ferrell has not agreed to provide an affidavit. It is too great a leap to conclude that, because Dr. Ferrell did not provide an affidavit indicating what his opinions are today, he must have abandoned his testimony at the trial over 25 years ago that he observed evidence of sexual assault during his examinations of the victims.

**Evidentiary Hearing**

Petitioners have requested a hearing in order to present their new evidence of innocence. "The district court has wide discretion" to decide requests for an evidentiary hearing. *United States v. Preciado,* 336 F.3d 739, 747 (8th Cir. 2003). "Absent exceptional circumstances, a motion for new trial based on newly discovered evidence may be decided on affidavits without a hearing." *United States v. Dogskin,* 265 F.3d 682, 687 (8th Cir. 2001). "The necessity for a hearing is lessened in cases involving challenged testimony where the trial judge has had the opportunity to observe the demeanor and weigh the credibility of the witness at trial." *United States v. Begnaud,*

848 F.2d 111, 113 (8th Cir. 1988); *see also Preciado,* 336 F.3d at 747 (stating that "[a] district court is in the best position to weigh the evidence and evaluate witness credibility").

This Court conducted Petitioners' trial and all other proceedings in this case. It is well versed in the facts of the case and had a first-hand opportunity to observe the witnesses and evidence at trial and at the hearing in 2001. In addition to seeing each witness and hearing each witness's testimony, the Court was able to observe their body language and demeanor. At the trial, three of the young victims were unable to testify in open court and the Court, after questioning, determined that the three victims should be permitted to testify by closed circuit television after making the findings required pursuant to 18 U.S.C. § 3509(b)(1)(B)(i). *See Rouse,* 111 F.3d at 568. Specifically, this Court found that the three victims were unable to testify in open court in the presence of Petitioners "because of fear." *See id.* at 568–69. *See also* CR 94-40015, Docs. 215 and 229, Transcripts of Victims' In-Chambers Testimony.

This Court has carefully considered and assessed the impact of the recantations and new experts' opinions on the strength of the government's case against Petitioners. *See Preciado,* 336 F.3d at 747; *Begnaud,* 848 F.2d at 113. Even considering the victim recantations and the new experts' opinions, this Court does not find that the requirements for an actual innocence claim have been satisfied. No exceptional circumstances warranting an evidentiary hearing on the motion for new trial have been shown.

## CONCLUSION

The Court concludes that *Peña-Rodriguez* does not require reopening of Petitioners' jury race bias claim. The Court also finds that Petitioners have failed to demonstrate actual innocence for purposes of a gateway claim under *Schlup*. It necessarily follows that if Petitioners have not met this lower standard, they have not provided the "more convincing proof" which would be required to meet the threshold for a freestanding actual innocence claim—even assuming such a claim is cognizable as an avenue for relief. *Dansby,* 766 F.3d at 816. Finally, the Court determines that Petitioners have not shown extraordinary circumstances to justify relief under Rule 60(b)(6).

Accordingly, Petitioners' request for relief under Rule 60(b)(6) will be denied and the motion will be dismissed for failure to obtain authorization from the Eighth Circuit to file a second or successive motion under § 2255. *Boyd,* 304 F.3d at 814 (holding that if the district court

26

determines Rule 60(b) motion is actually a second or successive habeas petition, it should dismiss the motion for failure to obtain authorization from the Court of Appeals or, in its discretion, transfer the purported Rule 60(b) motion to the Court of Appeals).

## CERTIFICATE OF APPEALABILITY

The Court finds that a reasonable jurist could conclude that this Court erred in finding that Petitioners' Rule 60(b)(6) motion is in effect a second or successive § 2255 motion and dismissing the motion. Accordingly, after careful review and consideration, the Court grants a Certificate of Appealability.

**IT IS ORDERED**:

1. That Petitioners' motion for a new trial under Rule 60(b)(6), Doc. 13, is actually a second or successive §2255 motion that must be dismissed for failure to obtain authorization from the Eighth Circuit;

2. That a Certificate of Appealability is granted on the issue whether Petitioners' Rule 60(b)(6) motion is in effect a second or successive § 2255 motion;

3. That Petitioners' motion for an adverse inference, Doc. 50, is denied.

Dated this 18th day of March, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK